IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

JAMES EDWARD BROWN,              §
                                §
          Petitioner,           §
                                §
v.                              §          2:09-CV-0078
                                §
RICK THALER, Director,          §
Texas Department of Criminal Justice,   §
Correctional Institutions Division,     §
                                §
          Respondent.           §

**REPORT AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS**

Came for consideration the Petition for a Writ of Habeas Corpus by a Person in State

Custody filed by petitioner JAMES EDWARD BROWN.  By his habeas application, petitioner

challenges his conviction for the offense of manufacture of a controlled substance out of the 100th

Judicial District Court of Collingsworth County, Texas, and the resultant 60-year sentence.[1]  For the

following reasons, the undersigned United States Magistrate Judge recommends petitioner's habeas

application be DENIED.

I.
FACTUAL BACKGROUND AND
PROCEDURAL HISTORY

Petitioner directly appealed his conviction to the Court of Appeals for the Seventh District

---

[1]Petitioner's minimum range of punishment was enhanced to 15 years by one prior felony conviction, to wit: a May 27, 1997 conviction for burglary.  Another enhancement paragraph was dropped prior to sentencing.

HAB54\R&R\BROWN-78.CONDENSED:2

of Texas arguing the evidence was factually insufficient to support his conviction and alleging

specific instances of trial court error.  *Brown v. State*, No. 07-06-0087-CR (Tex.App.–Amarillo

April 30, 2007) (unpublished).  In its opinion, the state appellate court summarized the facts as

follows:

> Appellant's child tested positive for cocaine at birth.  Child Protective Services was
> contacted to make arrangements for a safety plan for the child.  A CPS investigator,
> accompanied by a deputy sheriff, met with appellant and his wife to create a safety
> plan.  The investigator testified that appellant indicated during their meeting that "if
> anyone attempted to take his child that blood would be shed."  The investigator
> indicated the threat was taken seriously and a decision was made to pick up the
> child.
>
> For about ten days before his arrest, appellant, his wife, and the baby had resided in a
> small structure located on appellant's father's property.  The structure, which was
> referred to as the "sewing room," was detached from the father's residence.  The
> property also contained other outbuildings, including a "lawn mower shed" and a
> barn or shop.
>
> After an arrest warrant for appellant and an order to take the child were issued, law
> enforcement officers set up surveillance around the property.  The officers, who
> included four Texas Rangers, two Department of Public Safety officers and two local
> officers, conducted surveillance for two to three hours before they entered the
> property and arrested appellant.
>
> During their surveillance, some officers watched the back of the property.  During
> that time, they saw appellant and no one else.  The officers observed appellant walk
> back and forth between the sewing room and the barn a couple of times.  Three or
> four times, they also saw appellant come out of the barn and walk to the area
> between the lawn mower shed and a tractor parked next to that shed.  From their
> locations, the officers could not see appellant after he went between the tractor and
> the shed.[2]  One officer testified that he noticed appellant once threw something
> toward a trash pile when he came out from behind the tractor.  The officer believed
> the item appellant threw was a can.
>
> Other officers observed the front of the residence.  They also saw appellant leave the
> barn and disappear and re-appear several times.  They saw only one person come out
> of the sewing room, the appellant.

---

[2]As one officer described it as he testified with the aid of a photograph showing the tractor and shed, "The Defendant
would . . . walk in this area right here and would disappear between this tractor and this building right here."

After officers arrested appellant near the barn, they secured the main residence and the sewing room.[3]  Some officers detected the smell of ether[4] and traced the smell to the lawn mower shed.  They found, "in plain sight" inside the shed, a metal pot that contained a plastic fruit drink jug.  The jug contained a liquid that was bubbling.  One Ranger who had served in the DPS narcotics service testified:  "When I first observed . . . the bottle within the tub here, it was boiling very rapidly.  The second time – a short time later, I should say, I went back and looked at the tub again, or the bottle that was there, and it had stopped bubbling or boiling."  He described the setup as a methamphetamine laboratory.  Another Ranger, also with previous DPS narcotics service experience, described the jug's contents as an "active cook."  He said the liquid's movement indicated a chemical reaction was occurring in the jug, and that it appeared to him to be "a methamphetamine production."  Testimony from a DPS chemist confirmed the liquid contained methamphetamine.

A bottle of muriatic acid was located inside the shed, and the record includes testimony that muriatic acid is a common ingredient used in one method of manufacturing methamphetamine.  One of the officers examined the trash pile where it was believed appellant had thrown a can and the officer found several starter-fluid cans that had been punctured.  One of the officers testified that starter fluid is a component in the manufacture of methamphetamine and that it is common to find starter-fluid cans with holes punched in them around meth labs.

During the pat-down search of appellant following his arrest, an officer found a syringe in appellant's front shirt pocket.  The officer characterized the syringe as "drug paraphernalia."  Evidence also showed there were also several propane bottles behind the sewing room, some having fittings that were turquoise in color.  One of the officers testified that anhydrous ammonia will turn brass fittings turquoise and that it is a key ingredient in the manufacture of methamphetamine.  Inside the sewing room, officers found a jewelry box with a mirrored top that contained another syringe.  Officers testified that "meth" is commonly ingested by use of a syringe.  Another officer described the jewelry box as a "drug kit."

Appellant testified in his defense.  He testified he was working on a car in the barn with Cecil Johnson the morning of his arrest.  He indicated he had just bought the car, was cleaning it out and found the needle inside.  He testified he was worried about his wife and baby, and checked on them in the sewing room frequently.  He denied entering the lawn mower shed, going behind the tractor, throwing anything in the trash pile, and manufacturing methamphetamine.  He admitted to his prior convictions for burglary in Oklahoma and Texas.

---

[3]Testimony indicated no one was found in the main residence, and appellant's wife and baby were in the sewing room.

[4]One officer testified he smelled the ether while inside the sewing room.

> After the jury convicted appellant of manufacture of a controlled substance, he filed
> a motion for new trial alleging two grounds:  (1) a material witness, Cecil Johnson,
> was afraid to appear in court based upon what appeared to be threats or promises by
> the local law enforcement; and (2) misconduct by jurors.  The trial court did not hold
> a hearing on the motion for new trial and the motion was overruled by operation of
> law.

*Brown v. State*, No. 07-06-0087-CR at 1-5.  On appeal, petitioner alleged:  (1) the trial court erred

in denying his motion for instructed verdict because the evidence was legally insufficient to show

he was involved in the manufacturing of the methamphetamine; and (2) the evidence was factually

insufficient to convict.  In overruling these grounds, the state appellate court determined:

> Appellant's contention in support of his first issue is not that the evidence of
> manufacturing was lacking, but that the evidence failed to show he was involved in
> that activity.  To obtain a conviction for the manufacture of a controlled substance,
> the State must link the defendant either to an interest in the place where the
> manufacturing was taking place or to the actual act of manufacturing.  In the present
> case, the State successfully linked appellant with the manufacture of
> methamphetamine.

> In this case, appellant was not merely present on the property during the offense; he
> had lived there for about ten days prior to his arrest.  Although appellant testified it
> was not unusual to smell strong odors on the property because of a nearby dairy
> farm, the jury could infer appellant's awareness of the chemical process from
> testimony describing the strong odor of ether that was present.  Photographs in
> evidence confirm that the tractor mentioned in testimony was parked next to the only
> opening in the lawn mower shed, and that the metal pot and jug would be readily
> visible inside the shed to a person walking to the rear of the tractor.  Shortly after
> appellant's arrest, and following a period of two to three hours when appellant was
> the only person observed in the area, officers found the "active cook" underway.
> Evidence appellant emerged from that area on one occasion carrying an item he
> threw toward the trash pile indicates he engaged in some activity while out of sight
> behind the tractor.  These circumstances, coupled with testimony that he repeatedly
> walked to the location of the manufacturing activity, viewed in the light most
> favorable to a guilty verdict, would permit a rational jury to conclude beyond a
> reasonable doubt that appellant was not simply aware of the unlawful activity taking
> place, but was engaged in it.

> In support of his contention the evidence is factually insufficient, appellant points to
> the testimony of his father that others had access to the premises and to the testimony
> of his brother's former girlfriend, to the effect that the brother had engaged in

methamphetamine manufacturing.  Appellant also emphasizes his own description of his activities just preceding his arrest and the absence of testimony directly connecting him with the manufacturing.  Viewing all the evidence in a neutral light, we find that the evidence supporting the jury's verdict is not so weak that the verdict is clearly wrong and manifestly unjust or that the contrary evidence is so strong that the standard of proof of beyond a reasonable doubt could not have been met.

*Brown v. State*, No. 07-06-0087-CR at 6-8 (citations omitted).

Petitioner also alleged on direct appeal that (3) the trial court erred in failing to hold an evidentiary hearing on his motion for new trial.  In overruling that ground, the state appellate court determined:

A hearing is not required when the matters raised in the motion for new trial are subject to being determined from the record.  But a defendant is entitled to a hearing on a motion for new trial if the motion and accompanying affidavit(s) raise matters not determinable from the record on which he could be entitled to relief.  The affidavit must specifically show the "truth of the grounds for attack."  Appellant's motion for new trial had two attachments.  We must determine whether they show reasonable grounds for relief.  If appellant's motion and affidavits are sufficient, a hearing on the motion is mandatory.

Appellant first attached an affidavit made by his wife in support of his contention of jury misconduct.  Appellant argues on appeal that the affidavit showed he could be entitled to a new trial under Rule of Appellate Procedure 21.3(f) because it shows jurors talked with others about the case.  In her affidavit, appellant's wife states the following:

While waiting with [appellant] outside of the courtroom, in Wellington, Collingsworth County, Texas, I saw some of the Jury members talking to the officer who was in charge of the jury.  They were talking for a number of minutes.  When they made eye contact with me, they had a surprised look on their face.  I saw this before the guilty verdict was made.  I also saw three Jury members talking about the "White Jug" after the break at the beginning of the trial.

The affidavit first contains appellant's wife's statement she saw jury members talking for a number of minutes with the officer in charge of the jury.  By statute, the bailiff is to "attend the wants of the jury . . . ."  The affidavit contains no information about the topic of the jurors' conversation with the bailiff.  It therefore does not show that the conversation provided reasonable grounds for relief under Rule 21.3(f).

The affidavit contains also the affiant's statement she saw three jurors talking about the "White Jug."  On its face, the brief statement does not show that appellant's wife was in a position to know the contents of their conversation, since she merely "saw" the jurors talking.  That alone supports the trial court's decision not to hold a hearing on appellant's motion.  Assuming that appellant's wife meant she heard the jurors discussing the "White Jug," and assuming further that their discussion concerned the plastic jug admitted in evidence, the trial court nonetheless reasonably could have concluded the affidavit does not demonstrate reasonable grounds exist for relief under Rule 21.3(f).  Appellant does not cite, and we have not located, authority applying the phrase "when a juror has talked with anyone about the case" in Rule 21.3(f) to a conversation among jurors.

The second attachment to appellant's motion for new trial is a statement signed by Cecil Johnson.  The statement indicates Johnson was present on the property that morning and that police scared him with a threat to put him in jail if he "came back around."  Appellant contends the statement shows a material defense witness has been kept from court by threats, supporting his entitlement to a new trial under Rule of Appellate Procedure 21.3(e).  We agree with the State that the trial court was not required to consider Johnson's statement.

To constitute an affidavit, an instrument must be sworn to. To be sworn, a statement must unequivocally represent that its contents are true.  The signature and stamp of a notary public appears at the end of Johnson's statement, but the statement contains no jurat.  Johnson's signature appears in a concluding sentence that reads, "I [signature of Cecil Johnson], swear, this is my testimony to the best of my knowledge, on this date 6th of February (sic) 2006."  Johnson's statement does not meet the requirements of an affidavit.

*Brown v. State*, No. 07-06-0087-CR at 8-12 (citations omitted).  In his appeal, petitioner also alleged (4) the trial court erred in denying the motion for new trial.  In overruling this ground, the state appellate court determined that "[f]or the same reasons we have concluded the court did not abuse its discretion by denying appellant a hearing on his motion for new trial, we find also the trial court's denial of the motion was not arbitrary or unreasonable."  *Brown v. State*, No. 07-06-0087-CR at 12.

On April 30, 2007, the state appellate court affirmed the judgment of the trial court.  Petitioner appealed the appellate court's ruling by filing a petition for discretionary review with the Texas Court of Criminal Appeals.  Such petition was refused on November 7, 2007.

On April 2, 2008, petitioner filed a state application for a writ of habeas corpus. On September 10, 2008, the Texas Court of Criminal Appeals dismissed petitioner's habeas application as non-compliant. *Ex parte Brown*, No. 70,475-01. On January 21, 2009, petitioner filed a second state application for a writ of habeas corpus alleging ineffective assistance of trial and appellate counsel, insufficiency of the evidence and a denial of due process as a result of trial court error (the grounds he now asserts in his federal habeas application to challenge his conviction). *Ex parte Brown*, No. 70,475-02. On March 18, 2009, the Texas Court of Criminal Appeals denied petitioner's habeas application without written order.

Petitioner filed this federal application for a writ of habeas corpus on March 30, 2009.

## II.
## PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States for the following reasons:

1. Petitioner was denied effective assistance of counsel at trial because counsel failed to:

    a. file a motion to suppress the evidence of methamphetamine manufacturing found in the lawn mower shed, an out-building not subject to the search warrant;

    b. investigate and discover the affidavits upon which the arrest and search warrants were issued were based on false statements;

    c. request a continuance and the issuance of a bench warrant when a material witness did not appear at trial; and

    d. file a motion prohibiting the State from eliciting testimony from petitioner as to his criminal history during the guilt/innocence stage of the trial.

2. Petitioner was denied due process when the trial court failed to conduct an evidentiary hearing on petitioner's motion for new trial;

3.      Petitioner was denied due process because the State presented no evidence or insufficient evidence to show petitioner was manufacturing the methamphetamine; and

4.      Petitioner was denied effective assistance of counsel on appeal because counsel did not allege ineffective assistance of trial counsel.

III.
STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall <u>not</u> be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless that person first shows the prior adjudication:

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "Clearly established Federal law, as determined by the Supreme Court of the United States" includes only Supreme Court decisions as of the time of the relevant state-court adjudication on the merits.  *Greene v. Fisher*, 132 S.Ct. 38, 44 (2011).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case.  *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Review is limited to the record that was before the state court that adjudicated the claim on the merits and evidence introduced in federal court has no bearing on review. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997); *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (the Fifth Circuit recognizes this Texas state writ jurisprudence).

Petitioner filed a state habeas application challenging the constitutionality of his conviction and sentence on the same grounds he asserts in this federal habeas proceeding. The Texas Court of Criminal Appeals denied petitioner's state habeas application without written order. *Ex parte Brown*, App. No. WR-70,475-02. The ruling of the Texas Court of Criminal Appeals constituted an adjudication of petitioner's state habeas corpus claims on the merits.[5] *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999); *cf. Ex parte Thomas*, 953 S.W.2d 286 (Tex.Crim.App. 1997); *Ex parte Torres,* 943 S.W.2d 469 (Tex.Crim.App. 1997) (under Texas law a denial by the Court of Criminal

---

[5]The term "adjudication on the merits" in 28 U.S.C. § 2254(d) addresses whether the state court's disposition of the claim at issue was procedural or substantive. *Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir.2002) ( *en banc* ). Nothing in this case suggests the Texas Court of Criminal Appeals disposed of petitioner's claims on a procedural basis. *See Barrientes v. Johnson,* 221 F.3d 741, 778-80 (5th Cir.2000), *cert. dismissed,* 531 U.S. 1134 (2001) (setting forth analysis to determine whether state court adjudication was merits-based). The state court denial qualifies as a full and fair review of the grounds raised therein. This Court must treat the state court's "denial" as a merits adjudication of petitioner's state habeas application. *See Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999).

Appeals signifies the court addressed and rejected the merits of the claims). Therefore, the deferential standard set forth in 28 U.S.C. § 2254(d) is applicable to this case and must be demonstrated by petitioner. Consequently, this Court's review is limited to a determination of (1) whether petitioner has shown the state court's determination that petitioner's claims were without merit was based on an unreasonable determination of the facts in light of the evidence before the state court, or (2) whether petitioner has shown the state habeas court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

IV.
MERITS

A. Ineffective Assistance of Counsel Claims

In his answer, regarding petitioner's claims of ineffective assistance of counsel, respondent fully and accurately briefs the standard of review for claims of ineffective assistance of counsel. The Court will not repeat respondent's analysis, but references it as being accurate.

1. *Failure to File a Motion to Suppress*

At 12:10 p.m., on December 9, 2004, a Justice of the Peace issued a search warrant directing law enforcement officers to search for and seize:

> Methamphetamines and Kodi Cheyenne BROWN in the sewing room, which is de-attached to the west of the main residence at 365-1/2 4th Street, Dodson, Collingsworth County, Texas.

The search warrant affidavit described the sewing room as a small tan building with green trim that faces south. A photograph of the sewing room was attached to the affidavit. A warrant for petitioner's arrest for the offense of retaliation was also issued.

The property at 365-½ 4th Street, which encompassed the entire block, was owned by petitioner's father.  According to photographs admitted during trial, trial testimony, and a hand drawn diagram (not to scale) proffered by petitioner during state habeas proceedings, it appears the property consisted of a main residence, the sewing room, and a large shop abutting a street, with a tool shed next to the shop and a lawn mower shed (where the methamphetamine lab was found) and another small shed between the sewing room and the tool shed.  A solid metal fence ran parallel to the street from the tool shed to the small shed next to the sewing room, and then perpendicular to the street between the small shed and the lawn mower shed, placing the lawn mower shed in the corner and behind the fence, obscured from the street and the other structures.  The lawn mower shed appears accessible only from the back side of the fence.

Prior to executing the arrest warrant and the search warrant on the 4th Street property, officers surveilled the property from different vantage points beginning at approximately 10:45 a.m on December 9, 2004.  Officers testified the only person they observed on the property was petitioner and that he was seen walking between the shop and the sewing room and in the area between the lawn mower shed and a tractor parked next to that shed.  At 1:31 p.m., petitioner was arrested in front of the shop.  At trial, officers testified the shop was then searched incident to petitioner's arrest and petitioner was placed in a patrol car and removed from the property.  Trial testimony indicated the main residence on the premises was also searched pursuant to a protective sweep[6] contemporaneously with a search of the sewing room specifically named in the search warrant.[7]  Trial testimony did not establish that a search of the lawn mower shed or any of the other

---

[6]"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others," to dispel a reasonable, articulable suspicion that the premises may be harboring a person posing a danger to those on the arrest scene.  *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990).

[7]Kodi Brown was found in the sewing room with her mother, Angie Melton Brown.

structures was conducted at this time as part of the search incident to arrest or the protective sweep.[8]

At trial, officers further testified that as they concluded the protective sweep of the main residence and the search of the sewing room, the strong smell of ether was readily apparent while standing outside both structures.  Officers testified that based on their training, experience and knowledge, a strong smell of ether is commonly associated with the manufacture of methamphetamine.  The officers attempted to determine the source of the odor and discovered the methamphetamine manufacturing evidence in the lawn mower shed, visible through a large open door and in plain view.

By his first ground, petitioner contends the officers' discovery of the methamphetamine manufacturing evidence in the lawn mower shed and the subsequent search of the shed and seizure of such evidence violated his 4th Amendment rights, and that the evidence was suppressible.  Petitioner alleges trial counsel did not file a motion to suppress this evidence and that the failure to file a motion to suppress was unreasonable and deficient.  Petitioner contends he was prejudiced by trial counsel's failure to file a motion to suppress because the motion would have been granted, the evidence would have been suppressed and, without any evidence of methamphetamine manufacturing, the outcome of the proceedings would have been different.[9]  Petitioner argues that had counsel filed a motion to suppress, even if denied by the trial court, petitioner, at the very least, would have had a meritorious issue to raise on appeal.

---

[8]A valid protective sweep must meet all of the following five requirements: (1) police must have entered or remained in the home legally; (2) police presence in the home must be for valid law enforcement purposes; (3) the sweep must be supported by a "reasonable, articulable suspicion" that the area harbors an individual who poses a danger to those on the scene; (4) the sweep may be no more than a "cursory inspection" of that area where such an individual may be found; and (5) the sweep may last only long enough to dispel the reasonable suspicion of danger and may not last longer than the police are justified in remaining on the premises. *United States v. Gould*, 364 F.3d 578, 587 (5th Cir. 2004).

[9]Petitioner avers he repeatedly asked trial counsel to file a motion to suppress but that counsel refused.  A post-appeal letter from counsel indicates the bases for trial counsel's decision not to file a motion to suppress wherein he states: "As far as the attack on the search warrant, we have no grounds.  They arrested you on an arrest warrant and then searched incident to the arrest and with probable cause because of the smell.  The State never relied on the warrant."

Petitioner raised this particular claim of ineffective assistance of counsel during state habeas review.  The State did not file a response to petitioner's state application nor did they submit an affidavit from trial counsel addressing petitioner's allegation.  The trial court did not hold a hearing on this issue or make findings of fact or conclusions of law.  The Texas Court of Criminal Appeals denied petitioner's state habeas application without written order.  While that denial without written order constitutes a determination on the merits, constituting a finding by the state's high court that trial counsel was not ineffective for failing to file a motion to suppress, the state court record does not disclose the basis for such determination, and trial counsel has not been required to state under oath the reasons(s) he did not file a motion to suppress.

Claims of ineffective assistance of counsel involve mixed questions of law and fact and are reviewed under the "unreasonable application" standard of section 2254(d)(1).  *Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Murphy v. Johnson*, 205 F.3d 809, 813 (5th Cir. 2000).  To obtain federal habeas corpus relief, petitioner must demonstrate that in determining trial counsel was not ineffective for failing to file a motion to suppress, the state habeas court applied the proper governing federal laws in an "objectively unreasonable" manner to the facts of petitioner's case. *Gregory*, 601 F.3d at 352.  A writ will not issue solely because this Court concludes the state court made an erroneous decision, *Paredes v. Thaler*, 617 F.3d 315, 319 (5th Cir. 2010), rather, the state court decision must be "so clearly incorrect that it would not be debatable among reasonable jurists."  *Murphy v. Johnson*, 205 F.3d at 813.

An attorney's failure to file a motion to suppress may constitute deficient performance if the evidence would have been suppressed as a result of the motion.  *Ward v. Dretke*, 420 F.3d 479, 488 (5th Cir. 2005).  Petitioner's allegation of ineffective assistance in failing to file a motion to

suppress places the burden on petitioner to prove not only that counsel was deficient, but also that the motion, if it had been filed, would have been granted and the methamphetamine manufacturing evidence admitted at his trial would have been suppressed.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

The sewing room was specifically identified in the search warrant as the area to be searched. Since only the sewing room was identified, it could have been argued any search of the lawn mower shed would have been a warrantless search even though the entry upon the premises (sewing room) was lawful pursuant to the search warrant.  To be proper, the search of the lawn mower shed had to have been pursuant to the warrant or, had to fall within an exception justifying a warrantless search and seizure.  The trial testimony does not indicate the search of the lawn mower shed was made incident to petitioner's arrest or as part of a protective sweep.  If that is true, the officers needed either probable cause and a qualifying exigent circumstance to search the lawn mower shed or, if the methamphetamine manufacturing apparatus was readily viewable through the open door of the shed, the officers needed to have a lawful right to be in a position in front of the lawn mower shed to see the apparatus in plain view.

The strong smell of ether, combined with the other circumstances of this case,[10] could have provided the officers with probable cause to believe, under the totality of the circumstances, that a criminal offense was being committed in their presence and such could have supported a request for

---

[10]The search warrant identified methamphetamine as one of the subjects of the search, and the supporting affidavits for the search and arrest warrants indicated petitioner's new born child tested positive for cocaine and, ten (10) days later, petitioner tested positive for cocaine, methamphetamine and PCP.  While petitioner alleges there were irregularities with the testing in subsequent parental rights termination proceedings as discussed below at the time of the search, such information contributed to the totality of the circumstances known to the officers.  Moreover, upon petitioner's arrest, a pat down uncovered a syringe and lighters in petitioner's front shirt pocket, and additional drug paraphernalia was in plain view in the sewing room.  Propane bottles with fittings that had turned turquoise, indicative of the bottles being used to store anhydrous ammonia, a chemical used in the production of methamphetamine, were also found behind the sewing room, although the testimony did not indicate whether these were discovered prior to or after the discovery of the methamphetamine lab.  These factors, combined with the strong smell of ether, contributed to the officer's having probable cause to believe a criminal offense was being committed.

the issuance of a warrant to search additional areas of the property which may not have been subject to search under the search warrant which issued.

In order for a warrantless search to be justified the state must show not only the existence of probable cause at the time the search was made, but also the existence of exigent circumstances which made the procuring of a warrant impractical.  This issue was not litigated at trial, and, consequently, the trial testimony did not focus on the legality of the search and/or whether the officers believed exigent circumstances existed to allow a search of the shed without a warrant or, if they did, what those exigent circumstances were.

From the trial testimony, it appears there were numerous officers on the scene and that the property had been secured by the officers, however, no testimony was elicited concerning whether any of the officers believed there was any threat of destruction or removal of the evidence.  There was no trial testimony as to the estimated length of time it would have taken to obtain a traditional or telephonic warrant, nor was there testimony concerning whether the officers believed they could have obtained a search warrant within a reasonable time period without any negative consequences. Lastly, there was not any trial testimony as to the officers' knowledge of danger to themselves, others, or the property if a search was not immediately conducted to discover the source of the strong smell of ether.  Based solely on the trial testimony which, again, did not address the propriety of the search, it appears an argument could have been raised in a motion to suppress that exigent circumstances did not exist to justify a warrantless entry into the lawn mower shed.

Four conditions must be satisfied for the "plain view" doctrine to apply: "(1) the officer conducting the seizure must lawfully arrive at the position from which the object is plainly seen, *i.e.*, "the officer did not violate the Fourth Amendment in arriving at the place from which the

evidence could be plainly viewed;" (2) the object must be in plain view; (3) the object's incriminating character must be immediately apparent, *i.e.*, the officer must have probable cause to believe the object is contraband or evidence of a crime; and (4) the officer must have a lawful right of access to the object itself."  *United States v. Paige*, 136 F.3d 1012, 1023 (5th Cir.1998) (citation omitted);  *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990).  The issue here is whether the officers were lawfully in a position from which they could plainly see the methamphetamine production, *i.e.*, whether the officer violated the Fourth Amendment in walking to the area of the property from which the methamphetamine production could be plainly viewed, *i.e.*, through the open door of the lawn mower shed.

The officers clearly had a lawful right to enter the premises pursuant to the arrest and search warrants.  Petitioner was lawfully arrested in front of the shop and removed from the premises. Arguably the searches of the shop and main residence were conducted as exceptions to the search warrant requirement and were lawful.  The search warrant, however, identified only the sewing room as the area on the property to search for methamphetamine and for petitioner's child.  Under Texas law, a warrant authorizing the search of a house also permits the search of other structures or areas inside the "curtilage" of the house.  *Davila v. State*, 871 S.W.2d 806, 814 (Tex.App.-Corpus Christi 1994, pet. ref'd); *see United States v. Moore*, 743 F.2d 254 (5th Cir. 1984).  "Curtilage" is a common law concept referring to the area immediately surrounding a house or dwelling place to which the intimate activity of home life extends.  *Oliver v. United States*, 466 U.S. 170, 182 n. 12 (1984); *Smith v. State*, 722 S.W.2d 205, 208 (Tex.App.-San Antonio 1986, no pet.).  The area directly around the sewing room would securely fit within the concept of curtilage, but the record was not developed as to whether the lawn mower shed constituted curtilage subject to search under

Texas or federal law.[11]  Consequently, based on the trial testimony which, again, did not specifically address issues related to the propriety of the search, it appears a non-frivolous argument could have been made in a motion to suppress that a search of the lawn mower shed was not allowed under any theory that it was curtilage of the sewing room.

There is no readily apparent reason, from the record, why trial counsel did not file a motion to suppress.  However, the determination of ineffective assistance of counsel for failing to file a motion to suppress still places the burden on a petitioner to prove the motion would have been granted in order to satisfy the *Strickland* prejudice prong.  The mere fact that trial counsel could have filed a motion to suppress raising non-frivolous arguments against exigent circumstances or plain view does not necessarily show such arguments would have been successful.  Therefore, unless petitioner is able to make a showing that a motion to suppress had merit and that a favorable ruling on the motion would have changed the outcome of the case, counsel will not be considered ineffective for failing to file a motion.

Petitioner has not made that showing, *i.e.*, that a motion to suppress would have, in fact, been granted and the methamphetamine manufacturing evidence against him suppressed.  That finding is reached for several reasons.  First, the potential search and seizure issues set out above notwithstanding, it is questionable, and in fact appear improbable, that petitioner had standing to challenge the search of the lawn mower shed.  The state appellate court classified the property as belonging to petitioner's father.  Further, in his habeas applications, petitioner acknowledges there

---

[11]Whether a particular area is included within the curtilage of a home is determined by whether appellant had a reasonable expectation of privacy in the area.  *See Oliver v. United States*, 466 U.S. at 180; *Bower v. State*, 769 S .W.2d 887, 897 (Tex.Crim.App. 1989), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App. 1991). Factors considered are:  (1) the proximity of the area to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the use to which the area is put; and (4) the steps taken to protect the area from observation by any passerby.  *See United States v. Dunn*, 480 U.S. 294, 301 (1987).

was no evidence showing he had an "interest" in the lawn mower shed where the methamphetamine manufacturing was taking place. *Federal Petition*, at 7-F; *Ex parte Brown*, No.70,475-02 at 74.  In fact, petitioner acknowledges the property in question belonged to his father and not to him.  Proof of a "reasonable expectation of privacy" is the key to all Fourth Amendment claims. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex.Crim.App. 2004).  Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment has the burden to first show he had a reasonable expectation of privacy that the government invaded. *Id.*  A defendant has no standing to complain about the invasion of someone else's personal rights. *Id.*  Only after a defendant has established his standing to complain may a court consider whether he has suffered a substantive Fourth Amendment violation. *Id.*

To establish standing, the defendant has the burden of providing facts to establish a legitimate expectation of privacy, and to carry this burden, he must prove that (1) by his conduct, he exhibited an actual subjective expectation of privacy, and (2) circumstances existed under which society was prepared to recognize his subjective expectation as objectively reasonable. *Villareal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996).  Texas case law sets forth numerous factors that will be deemed relevant in determining whether the defendant's subjective expectation is one that society is prepared to recognize as objectively reasonable. *See Granados v. State*, 85 S.W.3d 217, 223 (Tex.Crim.App. 2002), *cert. denied*, 538 U.S. 927 (2003); *Voyles v. State*, 133 S.W.3d 303, 306 (Tex.App.– Fort Worth 2004, no pet.).  Primarily, an accused must have a property or possessory interest in the place invaded.  By petitioner's own acknowledgment, he concedes he did not have a property or possessory interest in the lawn mower shed.  Without such an interest, petitioner cannot show that had trial counsel filed a motion to suppress, such motion would have had merit, would

have been granted, the evidence would have been suppressed, and petitioner would have been acquitted or the outcome of the trial changed in any way.

Secondly, petitioner has not shown a motion to suppress the evidence for lack of exigent circumstances would have been granted.  While the Court acknowledges, based solely on the trial testimony, a non-frivolous argument could be made that exigent circumstances did not exist to support the warrantless search of the lawn mower shed, the trial testimony did not address the propriety of the search.  Critically, petitioner has not shown that testimony developed at a hearing on a motion to suppress would have established the officers' had no knowledge of the dangerousness and volatility of an active methamphetamine lab and did not have a reasonable belief that factors existed which made the situation dangerous to the officers or others.  Any testimony developed at a suppression hearing that the officers knew that cooking methamphetamine can produce a dangerous gas when inhaled, cause fires and, under certain circumstances, cause an explosion, would have defeated any motion to suppress for lack of exigent circumstances.  *Cf. Buchanan v. State*, 129 S.W.3d 767 (Tex.App.–Amarillo 2004); *Cady v. State*, 2003 WL 23095633 (Tex.App.-Dallas 2003) (officers' knowledge about the dangerousness of a meth lab and the fumes it emanated, and other factors pointing to some danger to officers or victims, was evidence of exigent circumstances).  The trial testimony showed some of the officers had previously worked in DPS Narcotics.  Petitioner has not shown the testimony would have established the lack of exigent circumstances and that a motion to suppress on this basis would have been successful.

Similarly, petitioner has not shown a motion to suppress arguing the plain view doctrine did not justify a warrantless entry into the lawn mower shed would have been granted.  Again, as there was no evidentiary hearing before the trial court and the state habeas court did not remand to the

trial court for a hearing, the evidence as to whether the lawn mower shed constituted curtilage subject to search was not developed.  Petitioner has not demonstrated the testimony at a hearing on a motion to suppress would have conclusively established the area searched was beyond the curtilage of the sewing room.

Testimony which could have been developed at a suppression hearing very well could have established the search and seizure was valid.  Since the trial testimony was not specifically directed to suppression issues and petitioner has not provided the Court with the purported testimony that would have developed at a suppression hearing, this Court cannot find, with certainty, that any motion to suppress would have been granted by the trial court or that if filed and denied by a trial court, would have provided a successful ground on appeal.  Consequently, this Court cannot find that counsel was deficient in failing to file a motion to suppress.  Even if the state habeas court made an erroneous determination that trial counsel was not ineffective for failing to file a motion to suppress, this Court is unable to find the state habeas court's decision was unreasonable or was "so clearly incorrect that it would not be debatable among reasonable jurists."  This is especially so as this Court is limited to the record before the state habeas court and review is limited to a determination of the objective reasonableness of the state court's decision.  *Cullen v. Pinholster*, 131 S.Ct. at 1398-99.

Petitioner has not demonstrated the state courts' decision that petitioner was not denied effective assistance of counsel was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Petitioner has not met the threshold standard of review for federal habeas corpus relief.  Consequently, even if

this Court disagreed with the state court determination, petitioner has not demonstrated he is

entitled to federal habeas relief by showing the state court decisions were objectively unreasonable.

Petitioner's first ground should be DENIED.

## 2. *Challenge to the Search and Arrest Warrants*

On December 9, 2004, Texas Ranger Jay Foster applied for the warrant to arrest petitioner.

In his affidavit, Foster stated he had good reason to believe that on or about November 29, 2004,

petitioner committed the offense of retaliation based upon the following:

- On 11-18-2004, Kodi Cheyenne BROWN was born and tested positive for cocaine.  Kodi's parents are James Edward BROWN and Angie MELTON.

- On 11-29-2004, CPS Investigator Diana BARTLETT and Collingsworth Chief Deputy Jerry GAMBLE (public servants) obtained a urine specimen from James at 365-½  4th Street, Dodson, Collingsworth County, Texas. James' urine tested positive for methamphetamine, cocaine, and PCP. During this time, James threatened to harm CPS Investigator BARTLETT and Chief Deputy GAMBLE if they returned to take away his custody of Kodi.

Ranger Foster also applied for the search warrant to search for methamphetamine and to search for

Kodi Brown at 365-½ 4th Street, Dodson, Texas, asserting as probable cause for the warrant the

following:

- On 11-18-2004, Kodi BROWN tested positive at birth for cocaine.

- On 11-29-2004, the Texas Department of Family & Protective Services tested James BROWN for drugs.  James tested positive for cocaine, methamphetamines, and PCP.  Affiant believes James has in his residence, which is a sewing room de-attached west from the main residence at 365-½ 4th Street, Dodson, Collingsworth County, Texas, methamphetamine.

- On 11-29-2004, James threatened CPS Investigator Diana BARTLETT and Collingsworth Chief Deputy Jerry GAMBLE with deadly force if they returned to take Kodi away from them.  James has a lengthy criminal history involving Burglary, Resisting Arrest, Escape, and Felon in Possession of a

Firearm.  Investigator BARTLETT has been contacted by anonymous family members who states James will carry out his threats if the authorities return to take Kodi away from him.

- On 12-09-2004, Associate Judge VANDERPOOL signed an order for the removal of Kodi BROWN from the custody of her parents, James BROWN and Angie MELTON.

Based on attachments, various other statements in memoranda, and notations made on exhibits, the Court has attempted to understand petitioner's argument under ground 1.b.  It appears petitioner is contending that during the 2006-2009 trial and appellate court proceedings involving the termination of Angie Melton Brown's parental rights of Kodi Brown, it was revealed that the CPS worker improperly requested petitioner's child be tested for drugs (without the parents' consent), that the child's initial urine test given at birth was actually negative for cocaine, that the CPS worker then improperly requested a subsequent test on the child's meconium, that such test was improperly conducted (taken from a diaper discarded in the trash when the child was beyond the age of producing meconium), that the test results were thus unreliable, and that it was the unreliable results of this test that served as the basis for the search warrant.  Petitioner thus appears to argue the statements in the affidavits concerning petitioner's child testing positive for cocaine at birth were false.  Petitioner may also be arguing that the statements concerning his testing positive for various drugs were also false as CPS reports introduced during the termination proceedings indicated the testing results were not confirmed due to error in the collection process and placement of the safety seal in the incorrect location to prevent tampering of evidence.  By ground 1.b., petitioner appears to contend counsel was deficient in failing to investigate and discover the affidavits upon which the arrest and search warrants were issued were based on these allegedly false statements and/or improper testings.  Petitioner appears to contend that had counsel investigated or

filed unidentified discovery motions, he would have discovered the warrants were not supported by probable cause because they were based on false statements or improper tests, and that had counsel challenged the warrants based on these false statements or elicited evidence of the false statements during trial, there is a reasonable probability a different outcome would have resulted.  Respondent maintains petitioner's claims, undefined as they are, constitute bald, self-serving assertions and that such are conclusory claims which do not entitle petitioner to relief.

Trial counsel must make a reasonable investigation of a defendant's case or if he determines a particular investigation is unnecessary, such decision must be reasonable.  *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997).  Whether counsel's investigation was reasonable depends, in part, on the information supplied by the defendant.  *Id.*  A federal habeas petitioner who alleges inadequate investigation must show what the additional investigation would have uncovered and how his defense would have benefitted from such additional investigation.  *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993).

Initially, petitioner has not demonstrated trial counsel had any knowledge or was provided any indication that the statements in the affidavits supporting the warrants were incorrect or false.  If trial counsel was so informed, petitioner has not identified the source of that information, nor has he stated what steps trial counsel should have taken, in the criminal methamphetamine manufacturing trial, through investigation or by motion practice, which would have revealed false statements in the affidavits.

Moreover, petitioner has not demonstrated by reliable evidence in this proceeding that any statements in the probable cause affidavits were, in fact, false.  Taking judicial notice of the appellate court opinion in the termination proceedings, the undersigned notes that court overruled

the grounds challenging the meconium testing raised by appellant Melton-Brown, finding such grounds could not be considered.  The appellate court then determined the evidence to support the termination of appellant's parental rights was legally and factually sufficient.  Other documents petitioner has submitted to this Court and the state habeas court to demonstrate false statements in the probable cause affidavits are partial documents, unverified, and from unknown sources.  Petitioner has not submitted competent and/or conclusive evidence that the affidavits were, in fact, based on false statements which would have been discoverable if trial counsel had undertaken additional investigation.

Moreover, to the extent, if any, petitioner argues counsel could have successfully challenged the warrants if he had adequately investigated and discovered the purported false statements, petitioner's claim is without merit.  In determining whether a search warrant establishes probable cause, a court must disregard any intentional or reckless misrepresentations made by the affiant in the affidavit. *United States v. Cherry*, 50 F.3d 338, 341 (5th Cir.1995).  Under Texas law, probable cause exists when the affidavit presents facts and circumstances sufficient to justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued.  *Cassias v. State*, 719 S.W.2d 585, 587 (Tex.Crim.App. 1986); *State v. Bradley*, 966 S.W.2d 871, 873 (Tex.App.-Austin 1998, no pet.).  The issuing magistrate's determination of probable cause must be given great deference and will be sustained if the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing.  *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex.Crim.App.2004).  Here, there was such a substantial basis on the face of the affidavits for the issuing judge to make a determination that probable cause existed for the issuance of the warrants.

Petitioner has not demonstrated the affiants intentionally made false statements, that the

warrants were not facially valid, or that the officers did not rely on the warrants in good faith in executing such warrants.  *See United States v. Leon*, 468 U.S. 897 (1984) (the exclusionary rule does not bar the use of evidence obtained by officers acting in good faith reliance on a warrant which is later found not to be supported by probable cause).  Additionally, petitioner has not demonstrated how any additional investigation by trial counsel into the statements would have resulted in the proceedings against him being different.  Namely, the statements petitioner claims were false in the affidavit would have had no bearing on the arrest warrant as it was issued for petitioner's charged offense of retaliation.  Similarly, the search warrant was issued not only for the search of methamphetamine but also for the search of petitioner's child in order to enforce a removal order.  Petitioner's claims are bald, self-serving assertions and such conclusory claims do not state a claim for relief.  Petitioner's ground should be DENIED.

### 3. *Failure to Secure a Witness*

Several law enforcement officers testified at trial that they conducted surveillance of the entire property on 4th Street for several hours prior to petitioner's arrest, and that the only person they observed on the property was petitioner.  Petitioner was observed going in and out of the shop, the sewing room, and around the tractor in front of the lawn mower shed.  Although not seen on the property itself, officers identified one Cecil Johnson as being present in his truck in front of the shop near the street when petitioner was arrested.

Trial counsel caused a subpoena to be issued for Cecil Johnson to appear and testify at trial. Law enforcement officers attempted to serve Johnson with the subpoena on numerous occasions but were unable to do so.  Vol. 5, p. 110-11.  Even though trial counsel had been in contact with Johnson concerning his testimony, Johnson did not appear at the courthouse to testify at the trial.

Counsel continued in his attempts to compel Johnson to appear and testify but did not request a continuance of the trial in a further attempt to have Johnson served with the subpoena.  Instead, counsel called another witness, Tommy Stewart, who testified that on the day petitioner was arrested, he visited petitioner two times at the shop on the property, that he parked in front of the shop in two different places and obtained parts for a car he was working on, that Johnson was present on both of those times as was petitioner's girlfriend, and that petitioner was working on a car in the shop and was welding in the shop doorway.

Petitioner contends Johnson was a material witness to the events that transpired on the day he was arrested and was the only eyewitness present the entire morning of petitioner's arrest.  By ground 1.c., petitioner contends that when trial counsel learned Johnson was not going to appear to testify, counsel should have requested a continuance of the trial in order to secure Johnson's testimony, and should have requested the trial court issue a bench warrant for Johnson.  Counsel's failure to do so, petitioner contends, was deficient.[12]  Petitioner argues that had counsel made such requests, the trial court would have had to continue the case and issue a bench warrant for Johnson because petitioner had alleged facts demonstrating the necessity of Johnson's testimony, and that if the court refused, petitioner would have had a meritorious issue on appeal.  Petitioner argues he was prejudiced by counsel's failure to request the continuance and bench warrant because Johnson's testimony would have rebutted the officers' testimony that petitioner was the only one they observed on the property the day of the arrest, would have corroborated petitioner's testimony as to his activities the morning of his arrest as well as Johnson's presence on the property, and would

---

[12]Petitioner notes counsel had subpoenaed Johnson, even if he was never served, had spoken to Johnson the night before he was to testify, and had described Johnson as vital to petitioner's defense in a subsequent motion for new trial, contradicting any argument that it was trial strategy not to elicit Johnson's testimony.

have bolstered petitioner's credibility, thereby providing exculpatory, non-cumulative evidence for petitioner's defense.[13]

Petitioner has not shown he was prejudiced by any failure of trial counsel to request a continuance or a bench warrant. Officers had attempted to serve Johnson with a subpoena to no avail. Counsel, although in contact with Johnson the previous day and expecting him to appear at trial that morning, did not know where Johnson was. Moreover, Stewart testified as to Johnson's presence at or around the shop on the day of petitioner's arrest in rebuttal to the officers' testimony that no one else was present on the property during their 2-3 hours of surveillance on the day of the arrest. Had trial counsel requested a continuance, the trial court was not required to grant such motion and, in all likelihood, would have denied it considering petitioner's announcement of ready for trial, the unknown whereabouts of the witness, and the rebuttal testimony of Stewart. Nor would counsel's request for a bench warrant have been granted since Johnson had never been served with the subpoena and thus was not in violation of any court order. Moreover, petitioner has not shown Johnson would have, in fact, testified despite any additional actions taken by trial counsel. Nor has petitioner shown by proper evidentiary means what Johnson's purported testimony would have been, or how such would have furthered petitioner's defense beyond the

---

[13]On February 6, 2006, Johnson signed a notarized statement wherein he stated the following concerning the events of the day of petitioner's arrest: (1) Johnson was at petitioner's residence on the morning of December 9, 2004 around 9:30; (2) Johnson worked with petitioner on a car in the shop for an unspecified period of time, that he and petitioner left to retrieve a part from the junk yard and that when they returned Tommy Stewart pulled up seeking a part of a vehicle; (3) petitioner cleaned out the car inside the shop; (4) he worked on the car while petitioner stepped to the back door to use a cutting torch; (5) petitioner then went out the front of the shop to check on Angie and the baby in the sewing room; (6) petitioner returned around 2:15 and advised Johnson he was about to take Angie and the baby to a doctor's appointment and began to fill the car with gas; (7) Johnson then walked to his truck and the police arrived at some point thereafter, arresting petitioner; (8) police told Johnson to stay away or they would throw him in jail; and (9) Johnson was not aware of the subpoena issued for his testimony at trial.

In his motion for new trial, petitioner argued he was entitled to a new trial because Johnson did not appear to testify due to threats or coercion by law enforcement and that his testimony was material to the defense. Petitioner's motion for new trial was denied without a hearing. On appeal, petitioner argued the trial court erred in failing to hold an evidentiary hearing on his motion for new trial. In overruling this ground, the state appellate court held the trial court was not required to consider Johnson's statement because it was not properly sworn to.

testimony elicited at trial.  Petitioner has not shown trial counsel was deficient in failing to request a continuance or a bench warrant, or that petitioner was prejudiced by counsel's failure to do so.  This ground should be DENIED.

### 4. *Rule 404(b) Motion*

Petitioner elected to testify during the guilt/innocence phase of the trial despite being advised by counsel, as well as the trial court, that evidence of his prior convictions would possibly be admissible since testifying placed his credibility at issue.  Vol. 5, p. 25-27.  At the beginning of petitioner's cross-examination, the State elicited general information concerning his two prior 1997 felony burglary convictions to impeach petitioner's credibility.[14]  Vol. 5, at 67-69.

By ground 1.d., petitioner argues trial counsel, knowing petitioner was going to testify, was deficient in failing to file a motion under Texas Rules of Evidence 403, 404 and 609 to prevent the State from eliciting testimony of petitioner's criminal history during the guilt/innocence stage of the trial.  Petitioner maintains such a motion would have prevented the jury from hearing evidence of petitioner's prior criminal record without the trial court first performing a balancing test.  Petitioner concludes he was prejudiced by counsel's failure to file such a motion because without the motion, the jury learned petitioner had prior convictions, and such knowledge adversely affected the jury's determination of his guilt on the methamphetamine manufacturing charge, resulting in fundamental unfairness and a violation of due process.

Petitioner has failed to show the basis upon which his prior convictions would have been ruled inadmissible for purposes of impeaching his credibility during the guilt/innocence stage. Petitioner asserts evidence of these prior convictions was not admissible but fails to identify why.

---

[14]The convictions were the same alleged as enhancement paragraphs in the indictment.

Further, petitioner was advised by both his trial counsel and the trial court of the possibility evidence of his prior convictions would be elicited, voiced his understanding, but took the stand and testified anyway.  Since trial counsel had no valid basis for an objection to the evidence of petitioner's prior convictions, petitioner cannot show deficiency on the part of counsel for failing to object or make a frivolous motion, nor can petitioner show prejudice.  Petitioner's ground should be DENIED.

## B.  Hearing on Motion for New Trial

Trial counsel filed a motion for new trial alleging (1) juror misconduct and (2) threats by law enforcement prevented subpoenaed witness Cecil Johnson from testifying.  Submitted with the motion for new trial was an affidavit from petitioner's wife averring she saw some of the jury members talking to the bailiff prior to the verdict and that she "saw" three jury members talking about the "white jug" after a break during the trial.  Petitioner also submitted an unverified statement from Cecil Johnson stating that on the day of petitioner's arrest, police told Johnson to "STAY away from the [B]rowns and don't come back around them or they would throw [him] in jail."  The trial court denied petitioner's motion for new trial without conducting a hearing.

On appeal, petitioner asserted trial court error in failing to hold an evidentiary hearing on the motion for new trial.  The state appellate court determined the factual support petitioner presented to the trial court in support of his motion for new trial did not create a material factual dispute and, thus, the trial court did not abuse its discretion, under state law, in failing to hold a hearing on petitioner's motion for new trial.  In state habeas proceedings, petitioner again asserted trial court error in failing to conduct an evidentiary hearing but asserted the trial court's failure to do so denied petitioner due process of law.  The Texas Court of Criminal Appeals denied relief on the merits.

By his second ground, petitioner again alleges he was denied due process as a result of the trial court's failure to hold an evidentiary hearing prior to denying his motion for new trial. Petitioner has not, however, demonstrated the state courts' decision that petitioner was not denied due process on his motion for new trial was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.  The state appellate court enunciated the bases for its finding that the state trial court did not abuse its discretion in failing to hold a hearing.  Petitioner has not demonstrated the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Petitioner has not met the threshold standard of review for federal habeas corpus relief, nor has he demonstrated the merits of his denial of due process claim for failure to conduct a hearing on his motion for new trial would otherwise entitle him to federal habeas corpus relief. Consequently, even if this Court disagreed with the state court determinations, petitioner has not demonstrated he is entitled to federal habeas relief by showing the state court decisions were both incorrect and objectively unreasonable.  Petitioner's second ground should be DENIED.

## C.  Sufficiency of the Evidence

By his third ground, petitioner alleges there was insufficient or no evidence to support his conviction for manufacturing methamphetamine because there was no evidence linking petitioner to the methamphetamine.  Petitioner asserts he had no "possessory interest" in the lawn mower shed where the manufacturing was taking place, and there was no evidence that he was in control of, had knowledge of, or took an active part in manufacturing the methamphetamine.  Petitioner concludes the evidence only showed he was in the vicinity of the manufacturing and thus the evidence was not sufficient to support his conviction for manufacturing a controlled substance.  Petitioner raised this

ground on direct appeal and in state habeas corpus proceedings.

To the extent petitioner argues there was factually insufficient evidence to support a guilty verdict, such a claim is not cognizable on federal habeas corpus review.  The legal authority to conduct factual sufficiency reviews derives from the Texas Constitution and statutory authority, and not from any federal constitutional right.  *White v. State*, 922 S.W.2d 126, 129-30 (Tex.Crim.App. 1996).  Thus, the Texas courts' more exacting factual sufficiency standard does not implicate federal constitutional concerns.  *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002).  Neither the United States Supreme Court nor the Fifth Circuit Court of Appeals has recognized factual insufficiency as a valid basis for federal habeas relief.  Accordingly, any factual sufficiency claim fails because petitioner has not shown a deprivation of any federally-secured right.

To the extent petitioner claims there was legally insufficient evidence to support his conviction, his claim is without merit.  In his answer, respondent fully and accurately briefs the *Jackson v. Virginia* standard this Court must apply in reviewing legal insufficiency claims.  Review of the evidence at trial shows those standards were satisfied.

On direct appeal, the state appellate court found the evidence legally and factually sufficient to support petitioner's conviction.  The appellate court opinion thoroughly discussed the circumstantial evidence against petitioner noting, *inter alia,* that he lived on the property, the area was under surveillance for a period of time before petitioner was arrested and petitioner was the only person the officers observed during that time, that an active cook was taking place when petitioner was arrested, that the officers observed petitioner walk numerous times around the tractor directly in front of the open lawn mower shed where the cook was taking place, that the manufacturing apparatus was readily visible from the doorway of the shed, and the strong odor of

ether was present even near the main residence.  The appellate court concluded the circumstantial evidence, viewed in the light most favorable to the jury's verdict, would permit a rational jury to conclude beyond a reasonable doubt that petitioner was not simply aware of the unlawful activity taking place, but was engaged in such unlawful activity.  Petitioner has failed to establish the appellate court opinion was in conflict with clearly established federal law and has failed to meet his burden under the AEDPA of showing the state court's denial of his claim was unreasonable.

Moreover, it was within the sole province of the jury as the finder of fact to assess the credibility of the witnesses and to choose among reasonable constructions of the evidence.  *See United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999).  A jury is not to be second-guessed by a reviewing court in its choice of which witnesses to believe.  *See United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995).  On federal habeas review, "[a] federal court may not substitute its own judgment regarding the credibility of witnesses for that of the state courts."  *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985).  Moreover, "[t]he habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact."  *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993).  Based on a review of the record as a whole, a rational finder of fact could have found the evidence presented established the essential elements of the offense beyond a reasonable doubt.  Petitioner's insufficiency claim is without merit and should be DENIED.

## D.  Ineffective Assistance of Appellate Counsel

Trial counsel filed an appeal on petitioner's behalf arguing the evidence was factually insufficient to support petitioner's conviction and alleging specific instances of trial court error. The state appellate court affirmed petitioner's conviction.

In his final ground, petitioner asserts appellate counsel could not represent petitioner

effectively on appeal because he could not allege ineffective assistance of trial counsel claims against himself on appeal.  Petitioner notes counsel would have had to acknowledge he was ineffective at trial to assert this ground, thereby creating a conflict of interest.

As discussed above, petitioner has not shown counsel was ineffective at trial.  Consequently, petitioner has not shown an issue of ineffectiveness which appellate counsel failed to discover and/or raise on appeal.  As a result, it has not been shown that appellate counsel was deficient in his representation of petitioner.  Similarly, petitioner has not shown he was prejudiced by any deficiency of appellate counsel because petitioner has not shown a reasonable probability that a claim of ineffectiveness of trial counsel would have prevailed on appeal.

Moreover, in Texas, grounds of ineffective assistance of counsel are not commonly asserted on direct appeal.  A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim.  *Salinas v. State*, 163 S.W.3d 734, 740 (Tex.Crim.App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex.Crim.App. 1999).  "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions."  *Salinas*, 163 S.W.3d at 740.  To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness."  *Id*.  Here, even as to allegations raised during state habeas, the record is silent as to the reasons for many of counsel's actions and decisions.  Where there is no record relative to counsel's decisions, an allegation of ineffective assistance lies beyond effective appellate review.  Further, petitioner has not produced evidence rebutting the presumption that trial counsel acted reasonably.  Consequently, petitioner could not have succeeded on a ground of ineffective assistance of counsel on appeal.  Petitioner's fourth ground should be DENIED.

V.

RECOMMENDATION

For the reasons set forth above, it is the RECOMMENDATION of the United States

Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus

filed by petitioner JAMES EDWARD BROWN be DENIED.


VI.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 10th day of February, 2012.


_____

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


### * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the
event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is
fourteen (14) days from the date of filing as indicated by the "entered" date directly above the
signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by
electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the
fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See*
28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report
and Recommendation." Objecting parties shall file the written objections with the United States
District Clerk and serve a copy of such objections on all other parties. A party's failure to timely
file written objections to the proposed findings, conclusions, and recommendation contained in this
report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the
Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services
Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th
Cir. 1988).